EMERSON & CHILDS, Appellants, *vs.* STURGEON *et al.*, Respondents.

1. It is error to instruct that a plaintiff cannot recover, if there is any evidence whatever, either direct or inferential, upon which the jury could find a verdict.

2. Under a system of practice which permitted the defence of *liberum tenementum* to be made to an action of trespass *quare clausum fregit,* by evidence under a general plea, without being specially pleaded, *it was held,* that the plaintiff might newly assign the abuttals of his close by evidence.

*Appeal from St. Louis Court of Common Pleas.*

*Todd & Krum,* for appellants.
*R. M. Field,* for respondents.

SCOTT, Judge, delivered the opinion of the court.

This was an action of trespass *quare clausum fregit,* begun in the year 1848, by the appellants against the respondents, for entering certain premises situate in what is called " North St. Louis," a portion of the city of St. Louis, and upon which the appellants had their saw-mill and boat yard, and carried on the business of the same thereon. The plea to the action was such as was then required by the statute, viz: " And the said defendant comes and defends the demand of the plaintiffs." A witness testified that the premises and boat yard had a fixed boundary. The boundary extended from a

certain large gully on the north side of it, and south to Childs' log yard, and from Second street east to the Mississippi, making in all four acres or near it. The witness deposed to a trespass committed on these premises thus described. The appellants, prior to this trespass, had been in peaceable possession of the premises. Isaac H. Sturgeon, the agent of Chambers, under whose authority the respondents acted, endeavored to make an arrangement with Emerson, one of the appellants, so that he might have leave to make a fence on the disputed ground, but without effect. Sturgeon wanted Emerson to take a lease from him. A witness for the plaintiffs stated, on cross examination, that he paid for the plaintiffs the rent for the mill site to Isaac H. Sturgeon, agent for Wm. Chambers. Evidence was offered, brought out on cross examination, tending to show that Chambers owned a portion of the land on which the trespass is alleged to have been committed. On the close of the appellants' evidence, the court instructed the jury that the plaintiffs, from the evidence, were not entitled to recover, and thereupon a nonsuit was taken.

1. We cannot see why this instruction should have been given. Surely the term "demurrer to evidence," will not be applied to a case like the present. The defendants, it is true, produced no witness, but endeavored to make a defence by a cross examination of those who were examined by the plaintiffs. So facts for both sides were before the jury ; why not, then, let the jury determine the case under instructions from the court? This mode of practice cannot succeed. What question of law was decided below? To what points did the court direct its attention? Are we informed by this record? Must we grope in the dark to find out what was decided, and then be told for our pains that we misconceived the point on which the cause turned in the court below? Instructions, like that in the present case, should never be given but where the evidence is all on one side, and there is an obvious omission of a link in the chain, which absolutely prevents a recovery by the plaintiff. If there is the

least particle of evidence, whether direct or merely inferential, upon which a verdict can be founded, such instructions are improper. The court can grant the same party but one new trial. Is this restraint to be evaded by instructions like that in the present case? In all cases, the safer course is to call the attention of the court to the defect in the evidence, by an instruction to the point in which it is defective, and without the proof of which a verdict for the plaintiff cannot be sustained. Cases coming here, with such instructions as were given in this case, are generally reversed, and must necessarily be so. We are required to act only on matters determined below. This court deals with the law and not with the facts. When there were facts in evidence, opposed to those relied on by the plaintiffs, is it a matter of law which way those facts preponderate? It is no answer to say, the facts came from the plaintiffs' witnesses. They came from the plaintiffs' witnesses because they were made witnesses for the defendant. It is no cross examination for a defendant to take a plaintiff's witness and prove a defence before the plaintiff's case is made out.

From the briefs in the cause, it appears that the defendants relied on the defence, that, as they had given evidence that they were possessed of a freehold in the *locus in quo*, in which the trespass is alleged to have been committed, they were entitled to a verdict, as from the vague description of the premises in the plaintiffs' declaration, it may be that the alleged trespass was on the defendants' own freehold. By the rules of pleading, the plea of *liberum tenementum* was required to be specially pleaded; and when so pleaded, the plaintiff could new assign the abuttals of his close. Under the statute in force at the time the plea was filed, that could not be done. The party, then, could only make that defence by evidence. If such a defence is raised by the evidence, reciprocal justice requires that it should be met by evidence. A new assignment of the abuttals of the close on which the trespass is alleged to have been committed, was the proper course for the plaintiffs. That

could only be done by evidence. The statute was not designed to change the ancient form of declaring. The plaintiffs could not foresee that such a defence would be set up.

The other judges concurring, the judgment will be reversed and the cause remanded.