THOS. DIXON, RESPONDENT, v. JERRY AHERN, APPELLANT.

USE AND OCCUPATION—REQUISITES TO MAINTAIN—TRESPASSER.—To maintain an action for use and occupation, it is necessary to show that the relation of landlord and tenant existed between the parties during the time of occupation. A mere trespasser cannot be held liable in such action.

IDEM—PRESUMPTION.—The burden of proof rests upon the owner of land to show that a person who at first entered upon the land as a trespasser afterwards became a tenant. The presumption is, that he continued to hold the land in the same character as he at first held it.

IDEM—INSTRUCTION.—The court refused to give the following instruction to the jury: "If you believe from the evidence in this case that the defendant, some time in the spring and summer of 1880, entered into or upon the tract of ground mentioned in the complaint, being the ground upon which his wood was corded, against the will and consent of plaintiff, and without the knowledge or permission of plaintiff, and without any previous understanding had with plaintiff in relation to such entry, and that said defendant continued to so hold the possession, and so continued to use and occupy the same against the consent of plaintiff, and that defendant, during such time, denied the plaintiff's right thereto, and never at any time promised or agreed to pay plaintiff for the use and occupation of said premises, but at all times refused to admit the right of plaintiff to recover from defendant for such use and occupation, then I charge you that plaintiff cannot recover in this action, and your verdict should be for the defendant." *Held*, upon a review of the testimony, that the instruction stated a correct principle of law; that there was evidence of facts which, with the presumptions arising therefrom, tended to establish the facts stated in the instruction, and that the court, therefore, erred in refusing to give the instruction.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

*Baker & Wines*, for Appellant:

I.　A party has the right to have the jury instructed as to the law applicable to a state of facts which he claims to exist. (*Moresi* v. *Swift*, 15 Nev. 215; *State* v. *Levigne*, 17 Nev. 435; *Davis* v. *Russell*, 52 Cal. 611.[1])

II.　The instruction refused stated the law of the case. The evidence submitted to the jury established the fact that there was no contract, express or implied, between the parties. There was no element of a contract. If the appellant occupied any position whatever as against the respondent, which infringed upon or was in violation of respondent's rights, it was as a trespasser, and the action for use and occupation will not lie. In order that such an action be sustained, the relation of landlord and tenant must be shown to exist. (*Lloyd* v. *Hough*, 1 How. 153; *Bancroft* v. *Wardwell*, 13 Johns. 489;[2] *City of Boston* v. *Binney*, 11 Pick. 1; *Central Mills Co.* v. *Hart*, 124 Mass. 123; *Ackerman* v. *Lyman*, 20 Wis. 454; *Lockwood* v. *Thunder B. R. B. Co.*, 42 Mich. 536; *O'Connor* v. *Corbitt*, 3

---

1　28 Am. Dec. 649.　　　　　2　7 Am. Dec. 896.

Cal. 370; *Ramirez* v. *Murray,* 5 Cal. 222; *Emerson* v. *Weeks,* 58 Cal. 439; *Carson River L. Co.* v. *Bassett,* 2 Nev. 249; *Knicker-bocker Co.* v. *Hall,* 3 Nev. 194; *Hathaway* v. *Ryan,* 35 Cal. 188; *Hurley* v. *Lamoreaux,* 29 Minn. 138.)

III. There was a fatal variance in this case between the statements contained in the complaint and the evidence upon the trial. The complaint shows a cause of action upon contract, while the evidence shows a cause of action (if any at all) upon a tort. (*Degraw* v. *Elmore,* 50 N. Y. 1; *Mercier* v. *Lewis,* 39 Cal. 532; *Tomlinson* v. *Monroe,* 41 Cal. 94; *Knickerbocker* v. *Hall,* 3 Nev. 194.)

IV. A trespass upon real property cannot be waived and an action in *assumpsit* sustained. (*Lockwood* v. *Thunder B. R. B. Co., supra; Carson River L. Co.* v. *Bassett,* 2 Nev. 249.)

*Wren & Cheney,* for Respondent:

I. It may well be doubted if the objection of a variance between the pleading and proof can be made for the first time in the appellate court. (*Roberts* v. *Graham,* 6 Wall. 581; *Mosher* v. *Lawrence,* 4 Denio, 421; *Whitney* v. *Sutton,* 10 Wend. 411; *Lawrence* v. *Barker,* 5 Wend. 305.)

II. Instructions are always to be given with reference to the facts proved before the jury. (*People* v. *Byrnes,* 30 Cal. 207; *People* v. *Atherton,* 51 Cal. 498; *Thompson* v. *Page,* 16 Cal. 77; *People* v. *Williams,* 43 Cal. 351; *Bowers* v. *Cherokee Bob,* 45 Cal. 508; *People* v. *Gilbert,* 60 Cal. 111; *People* v. *Cochrane,* 61 Cal. 551; *Dreyfuss* v. *Thompkins,* 64 Cal. 448; *State* v. *Whit,* 5 Jones L. 224; 72 Am. Dec. 540; *Fulton* v. *Day,* 8 Nev. 80; *Sherman* v. *Dilley,* 3 Nev. 21; *Moresi* v. *Swift,* 15 Nev. 215; *Meyer* v. *V. & T. R. R. Co.,* 16 Nev. 352.)

III. The instruction was properly refused because not supported by the evidence. It was based upon the jury believing a series of facts not established by the testimony of any witness. (Evidence reviewed.)

IV. It is true as stated by appellant that this action is based upon an implied contract. It was fought and won upon the theory that the circumstances connected with the entry, use, and occupation of the plaintiff's premises by defendant were such as to raise an implied promise on the part of defendant to pay what said use and occupation were reasonably worth.

Such a contract may be created without an express agreement between the parties. It may be created either by an express promise, or by such acts, conduct, and silent acquiescence that the law will imply a promise or estop the defendant from denying the existence of the liability. This promise may be inferred, either from what took place at the time of the entry, or subsequent. (*Ackerman* v. *Lyman*, 20 Wis. 457; *Lloyd* v. *Hough*, 1 How. 153; *Gunn* v. *Scovil*, 4 Day, 228.[1])

V. The verdict of the jury unalterably settled the question as to the character of the entry and holding, and conclusively determined that it was with the permission and consent of plaintiff.

By the Court, LEONARD, C. J.:

Action for use and occupation of a tract of land. It is alleged in the complaint that on or about September 10, 1880, plaintiff was the owner and in the possession of said tract, at which time, with plaintiff's permission, defendant entered into the use and occupation thereof, for the purpose of piling and storing cord-wood, and so continued in such use and occupation for said purpose until October 18, 1885; that said use and occupation was reasonably worth a certain sum stated, which sum was demanded prior to the commencement of the action, no part of which has been paid. Defendant denied plaintiff's ownership or possession, or that he entered with plaintiff's permission, or that he used or occupied said tract at any time with plaintiff's permission, or that said use and occupation were worth the sum stated, or any sum, or that said sum, or any sum, was due from defendant to plaintiff. Plaintiff recovered judgment for the amount claimed, besides costs. Defendant appeals from the judgment, and specifies as error the court's refusal to give the following instruction to the jury: "The court also charges you that, if you believe from the evidence in this case that the defendant, some time in the spring and summer of 1880, entered into or upon the tract of ground mentioned in the complaint, being the ground upon which his wood was corded, against the will and consent of plaintiff, and without the knowledge or permission of plaintiff, and without any previous understanding had with plaintiff in relation to

1    4 Am. Dec. 208.

such entry, and that said defendant continued to so hold the possession, and so continued to use and occupy the same against the consent of plaintiff, and that defendant, during such time, denied the plaintiff's right thereto, and never at any time promised or agreed to pay plaintiff for the use and occupation of said premises, but at all times refused to admit the right of plaintiff to recover from defendant for such use and occupation, then I charge you that plaintiff cannot recover in this action, and your verdict should be for the defendant."

In order to recover in this action, the plaintiff was obliged to allege and prove that the relation of landlord and tenant subsisted between him and defendant. That relation may be created either by an express or implied contract. (*Knickerbocker Co.* v. *Hall*, 3 Nev. 198; *Carson River L. Co.* v. *Bassett*, 2 Nev. 249; *Railroad Co.* v. *Harlow*, 37 Mich. 554; *Lloyd* v. *Hough*, 1 How. 154; *Watson* v. *Brainard*, 33 Vt. 90; Tay. Land. & Ten., sec. 19.)

" Every contract, whether express or implied, includes a concurrence of intention between the two parties, one of whom promises something to the other, who, on his part, accepts such promise." (1 Wait, Act. & Def. 70, 72.)

" The mere occupation of premises does not, of itself, necessarily imply that the relation of landlord and tenant exists." (Wood, Land. & Ten., sec. 3; Tay. Land. & Ten., sec. 25; *Eastman* v. *Howard*, 30 Me. 60;[1] *Ward* v. *Warner*, 8 Mich. 521; *Executors of Smith* v. *Houston*, 16 Ala. 115.)

" A tenant is one who occupies lands or premises of another, in subordination to that other's title and with his assent, express or implied. But, in order to create the relation, the two elements must concur. The fact that one is in possession of the lands of another does not, of itself, establish a tenancy, because, if he is in possession under claim of title in himself, or under title of another, or even in recognition of the owner's title, cut without his assent, he is a mere trespasser, and cannot be compelled to yield rent for his occupancy, nor is he estopped from attacking the owner's title. In such case, all the elements requisite to create the relation of landlord on the one hand, or of tenant on the other, are lacking, to wit, assent on the one hand, and subordination to the title upon the other. If the owner gives his assent to the occupancy of one who has entered upon his lands adversely, a tenancy is not thereby

1 50 Am. Dec. 611.

created. *In order to have that effect, the person in possession must accept such permission, and consent to hold under him, and in subordination to his title.* Where a person goes into the possession wrongfully, it is undoubtedly competent for the parties, by a contract subsequently made, to change the relation from that of a trespasser to that of a tenant. But in such a case the contract must be explicit, and embrace all the elements previously referred to; and if it is intended to have the tenancy commence from the date of the original entry, so as to change the owner's remedy for the period of wrongful occupancy from trespass to an action for rent, the contract should explicitly embrace the whole period of occupancy, or neither the character of the prior occupancy or the remedy will be changed. PATTERSON, J., in an English case, said: 'Use and occupation may arise from the waiver of a tort, or from simply letting into possession.' But it is apprehended that an action for use and occupation could not be maintained for a *tortious* entry and occupancy, because the owner of the premises cannot, by electing to do so, compel a person, who entered into the possession of premises against the owner's right, to occupy towards him the relation of tenant, unless such person elects to assume that relation; that is, the owner cannot, at his option, elect to treat such person as a wrong-doer or tenant; but, in order to enable him to treat him as a tenant, and proceed against him for rent, *the relation between them must be such as to raise the presumption* of a contract, or the remedy is by an action *ex delicto.* * * * In order to create the relation of landlord and tenant, no particular words are necessary; but the intention of one party to dispossess himself of the premises, and of the other to enter and occupy them as the former himself had a right to do, must, in some way, appear, and, in all cases where the facts are disputed, the question as to whether a tenancy exists is for the jury." (Wood, Land. & Ten., sec. 1; *Young* v. *Coleman,* 43 Mo. 179.)

"When a person occupies the land of another, not as tenant, but adversely, or where the circumstances under which he enters show that he does not recognize the owner as his landlord, this action will not lie." (*Butler* v. *Cowles,* 4 Ohio, 213;[1] *Waller* v. *Morgan,* 18 B. Mon. 142; *Lankford* v. *Green,* 52 Ala. 104.)

"Where, however, possession is taken by one, with the per-

[1] 19 Am. Dec. 612.

mission or assent of the owner, from such possession the relation of landlord and tenant is implied, as well as a promise to pay rent." (Wood, Land. & Ten., sec. 3; Tay. Land. & Ten., sec. 19; *Watson* v. *Brainard, supra.*)

In commenting upon an instruction given in *Ackerman* v. *Lyman,* 20 Wis. 456, the court said: "But the instruction is to the effect that, if he entered as a trespasser, without claim of title, and remained in possession with the assent of Holdridge, the law will imply a promise to pay rent. If this be so, then all that is necessary to convert a trespasser into a tenant is for the owner of the premises to say to him, 'I assent to your possession,' and a trespasser becomes a tenant without his own consent, or even against his will. A tort cannot thus be converted into a contract. * * *" "It [the agreement] may be implied from the defendant's entering into possession by the permission of plaintiff, or from acts showing the assent of the defendant, after a tortious entry, to hold under the permission of the plaintiff. (*Henwood* v. *Cheeseman,* 3 Serg. & R. 500; *Ryan* v. *Marsh,* 2 Nott & McC. 156; *Stockett* v. *Watkins,* 2 Gill & J. 326;[1] *Wiggin* v. *Wiggin,* 6 N. H. 298.) * * * In this case the plaintiff alleges in his complaint that Holdridge permitted the defendant to have, hold, and occupy the premises, and '*that the defendant, according to that permission, held and occupied,*' etc. The defendant, in his answer, denies the permission of Holdridge, and denies that he, according to the permission, held, occupied, and enjoyed the premises. It appears to us the instruction ignored the material part of the issue, to wit, that formed by the denial of the defendant that he held possession according to the permission of the plaintiff, and was therefore erroneous. A trespasser cannot be converted into a tenant without his consent." (And see *Ward* v. *Warner, supra; Jackson* v. *Tyler,* 2 Johns. 445; *Rickey* v. *Hinde,* 6 Ohio, 371; *Peters* v. *Elkins,* 14 Ohio, 345; *Hathaway* v. *Ryan,* 35 Cal. 193; *Hurley* v. *Lamoreaux,* 29 Minn. 138; *Kittredge* v. *Peaslee,* 3 Allen, 237.)

It is not claimed by counsel for respondent that the instruction refused is an incorrect statement of the law in the abstract, but it is said that it assumes a state of facts without any evidence fairly tending to prove them. Unless there was some evidence tending to establish all the hypotheses upon which the instruction was based, or some evidence from which the jury might

---

1 20 Am. Dec. 438.

have inferred the existence of the facts stated, then the instruction was properly refused. ( *Williams* v. *Barksdale*, 58 Ala. 288.) On the other hand, defendant was entitled to an instruction applicable to the theory he contended for, and which the evidence tended to support. ( *Comstock* v. *Norton*, 36 Mich. 280; *Anderson* v. *Bath*, 42 Me. 346; *Moresi* v. *Swift*, 15 Nev. 221.) " He was entitled to have specific charges upon the law applicable to each of the hypotheses or combinations of facts which the jury, from the evidence, might legitimately find." (*Sword* v. *Keith*, 31 Mich. 255.)

In *Bradford* v. *Marbury*, 12 Ala. 527,[1] the court say: " It is at all times a question of much delicacy to refuse a legal charge, on the ground that it is not supported by evidence, but to do so when there is any evidence before the jury to warrant the proposition is clearly erroneous." It is settled law that if there is any evidence tending to establish a point, it is error to instruct a jury that there is no such evidence.

In *Harley* v. *McAuliff*, 26 Mo. 525, it is said an instruction that there is no evidence on which a verdict can be founded is incorrect, if there is the least particle of evidence, whether direct or inferential, on which such verdict could be founded; and to the same effect is *Emerson* v. *Sturgeon*, 18 Mo. 170.

A charge is not abstract when there is any evidence, however weak, at all tending to support it. (*Hair* v. *Little*, 28 Ala. 236; *McNeill* v. *Arnold*, 22 Ark. 477; *Hopkins* v. *Richardson*, 9 Gratt. 496.)

Juries may infer the existence of a fact from other facts. (*Memphis & C. R. Co.* v. *Bibb*, 37 Ala. 699; *Morris* v. *Hall*, 41 Ala. 534; *Cambria Iron Co.* v. *Tomb*, 48 Pa. St. 393; Lawson, Presump. Ev. 557.) They are bound by all the rules and presumptions of law, as far as they apply. (Starkie, Ev., side p. 816; Proffatt, Jury T., sec. 360; 1 Tay. Law of Ev., sec. 171.)

Whether a legal presumption has or has not been rebutted is a question for the jury. (*Foster* v. *Berkey*, 8 Minn. 361.)

Taking the law applicable to the present case to be as above expressed, we are now prepared to examine the instruction in question in connection with the pleadings and evidence admitted. It was agreed by both parties at the trial that defendant entered upon the tract of land described in the complaint, and corded all of his wood thereon, against the will, and without the consent or permission, of plaintiff, and without any previous

1   46 Am. Dec. 264.

understanding in relation to such entry or use. There can be
no doubt therefore that until after the wood was corded there
were no facts that would justify an action for use and occupa-
tion. Up to that time the relation of landlord and tenant did not
exist, and there was no contract, express or implied, to pay rent.

At the request of plaintiff, the court instructed the jury as
follows: "If you believe from the evidence that the defendant
entered into the use of the premises without any express agree-
ment as to the rent to be paid therefor, but that after so enter-
ing, the defendant consented to and acquiesced in the right
and claim for rent for such use, the defendant is liable for the
reasonable value of such use as long as he continued to use the
same after so consenting and acquiescing in the claim and de-
mand of plaintiff. The silence, conduct, and acts of defend-
ant during the time he occupied said premises, and in removing
the wood therefrom, are proper matters for you to consider in
determining whether defendant impliedly agreed to pay rent
for the use of said premises."

It is patent therefore that plaintiff claimed, *first*, that he
was in possession of the land when defendant entered; and
*second*, that after the entry defendant impliedly consented to,
and acquiesced in, his right and claim for rent; that defendant
impliedly admitted plaintiff's right to the premises, and that his
occupancy was in pursuance of plaintiff's permission, and in
subordination to plaintiff's title. On the other hand, defendant
claimed, *first*, that plaintiff's possession was not such as to entitle
him to maintain an action for use and occupation; and *second*,
that he entered upon the land without plaintiff's knowledge,
against his will and consent, believing the same to be a part
of the public domain, and that after entering, he did not con-
sent to or acquiesce in the right and claim of plaintiff for rent, or
admit his right to the land. In a word, he denied completely
by his answer, and as fully as he was able by his evidence,
both claims of plaintiff above stated.

Referring, now, to the instruction under consideration, it is
admitted by counsel for respondent that there was evidence to
the effect that "defendant entered against the will and consent
of plaintiff, and without his knowledge or permission, and
without any previous understanding had with plaintiff in re-
lation to such entry, and that defendant never at any time

promised or agreed to pay plaintiff for the use and occupation of said premises."

But it is earnestly urged by them that there was no evidence "that said defendant continued to so hold the possession, and so continued to use and occupy the same against the consent of plaintiff"; or "that defendant, during such time, denied the plaintiff's right thereto"; or " that defendant at all times refused to admit the right of plaintiff to recover from defendant. for such use and occupation." It is true that no witness testified in terms to the facts hypothetically stated in the instruction, and objected to by counsel for respondent; but without deciding or intimating as to the *sufficiency* of the evidence to establish the several facts supposed, we think it is equally certain that there was evidence of facts which, together with the presumption arising therefrom, tended, at least, to establish the facts stated.

At plaintiff's request, the court instructed the jury to the effect that if, after entering, defendant consented to, and acquiesced in, the right and claim of plaintiff for rent, the defendant was liable; and in determining the question of acquiescence they might consider the silence, conduct, and acts of defendant while he occupied the premises, and in removing the wood. And counsel for respondent say that inasmuch as the jury by their verdict found that defendant did acquiesce in plaintiff's claim, and did. impliedly agree to pay rent, *their finding is conclusive.* But we cannot know what the finding would have been if the minds of the jury had been directed to the facts stated in the instruction.

In *State* v. *Carnahan,* 17 Iowa, 256, the court gave an instruction wherein he grouped together many facts legitimately provable in such a case, and which the evidence tended to establish, and instructed the jury that "such facts as these, if shown by the testimony, constitute circumstantial evidence. Circumstantial evidence is legal evidence, and convictions had upon it are legal convictions. In the case before them, the jury will look at all the evidence, and from it make up their minds as to the guilt or innocence of the defendant." The supreme court said: "But it is claimed in argument here that the facts thus grouped together by the court all bear upon one side, and against the defendant. * * * If there were, however, any facts shown, or which the evidence tended to show, bearing in his favor, it

was clearly competent for his counsel to group them together in like manner, and ask the court to give such instruction to the jury, and a refusal to give it would doubtless be error; but a failure to give such instruction, without request, cannot be regarded as error."

And in *McCausland* v. *Cresap*, 3 G. Greene, 161, the court said: " If the charge were not sufficiently direct on this or any other point involved in the case, it was in the power of the defendant's attorney to request of the court, in writing, instructions in such a manner as to bring the matter directly to the mind of the court, and have it, on the law, presented to the jury."

If there was evidence in this case which tended to establish the facts stated, the defendant had the right to have the minds of the jury directed to them, in determining the question of acquiescence subsequent to entry, which was the turning-point in the case.

We have seen what facts were admitted by both parties at the trial, and that from them the relation of landlord and tenant could not have existed until after defendant had entered and piled his wood. It was agreed also, and the court so instructed the jury, that defendant never expressly promised to pay rent. Plaintiff testified that the wood was placed on the ground without his consent or knowledge; that he did not want it there, and always objected to it, as he needed the ground for his own use, but was willing it should remain if he was paid rent. He testified that in one of the two or three conversations which he said he had with defendant in the summer or fall of 1880 he told defendant that he must have five dollars per month ground-rent, and that he would hold the wood as security; but defendant denied that plaintiff ever notified him that he would be required to pay for the use of the ground. Defendant also testified that he never had but one conversation with plaintiff in regard to the ground or wood until just before the commencement of this action, when plaintiff presented his bill; that at the first conversation plaintiff asked him if the wood was defendant's or Brisacher's, and that he replied, "It is mine or Brisacher's." Plaintiff did not testify that defendant at any time admitted plaintiff's right to the land, or his right to collect rent. There was no evidence that plaintiff had any other title than that given by possession, and defendant testified that in June,

1880, he and Brisacher went upon the ground looking for a suitable place to pile wood; that there was then no fence of any kind along the western side, and nothing that would indicate a line or the extent of any one's possession; that he piled his wood there, believing the ground was a part of the public domain, and that he had the same right to pile it there as he had to pile it anywhere on the public lands. Plaintiff presented his bill for rent, and it was not paid. In his answer he denied plaintiff's allegations of possession, and his use and occupation by plaintiff's permission. At the trial he endeavored to disprove plaintiff's claim of possession, and the court informed the jury what acts were necessary to give plaintiff sufficient possessory title to maintain an action for use and occupation.

On this appeal the verdict of the jury is conclusive as to plaintiff's possession when defendant entered, no exception having been taken to the court's instruction upon that question. But the facts above stated, and particularly those admitted concerning defendant's entry; the evidence that he believed the land was possessed by no one, and that he had a right to occupy it; that, prior to the entry, there was no fence on the western side, or anything to show the extent of any one's possession; that defendant did not settle plaintiff's claim when it was presented, before this action was commenced; that he contested the claim in the court below, as before stated; that he never promised to pay rent; that plaintiff, during the five years of occupation, never notified him that he would be required to pay rent,—this evidence tended, at least, to show that defendant entered upon, and continued to use, the land under claim of right in himself, not in subordination to plaintiff's right and title, not as plaintiff's tenant, and that he did not acquiesce in plaintiff's claim for rent; and, if the evidence tended to establish the facts just stated, it tended also to sustain every fact objected to in the instruction.

Again, if defendant entered against the will and consent of plaintiff, and without his permission, under claim of right in himself, there was a legal presumption that the same state of facts and defendant's state of mind continued as before, until the contrary was shown, and the burden of proof was upon plaintiff. (1 Greenl. Ev., sec. 41; Best, Ev. 303, note *c*, 389; Lawson, Presump. Ev. 167; *Table Mt. M. Co.* v. *Waller's Defeat*

*M. Co.*, 4 Nev. 220;[1] *O'Neil* v. *Mining Co.*, 3 Nev. 147; *Hanson* v. *Chiatovich*, 13 Nev. 397.)

In *Leport* v. *Todd*, 32 N. J. Law, 128, it was an undisputed fact that Drake, while possessed of the premises in question, declared that he had entered as the tenant of Hanna, who was admitted to be the owner. The court refused defendant's request to charge the jury, if they believed from the evidence that Drake entered as tenant of Hanna, he was presumed to have continued there as tenant until the contrary was proved. The appellate court held the refusal error, and said: "I think the court should have charged, as requested, to the effect that it is a legal presumption that a possession, beginning in the assent of a landlord, continues, in subordination to his title, until a change of tenure is shown by the evidence." There was an equally strong opposite presumption in this case.

In *Cummins* v. *James*, 4 Ark. 616, the trial court refused the following instruction: "If the jury believe from the evidence that the legal right to the money in controversy is in the bank of the United States, they must find for the defendants"; and "unless the jury believe from the evidence that the plaintiffs are legally the assignees of the bank, they must find for the defendants." Said the court: "The principle is unquestionably true that a party, to maintain an action, must be entitled to the legal interest in the suit. If the legal interest is shown to be in plaintiff, the action will lie; if in another, it cannot be maintained. If there is a contrariety of testimony as to the person in whom the legal interest is vested, and that question is a matter of fact, to be determined by the jury, then, of course, it would be error in the court to take the question from the jury. There was certainly a conflict of testimony as to the legal interest. * * * Now, the refusal of the first instruction virtually took from the jury the question of fact as to the right of action. The court, by refusing to instruct the jury that, if they believed the legal interest was in the bank of the United States, then they ought to find for the defendants, clearly decided the point that there was no evidence tending to show that the bank was the legal owner of the money. In this they were mistaken; for, by admitting the proof that the money was collected upon a judgment rendered in favor of the bank, there was a presumption raised that the bank possessed

the legal interest.    This presumption was rebutted and contra-
dicted by other testimony in the cause; but whether it was
fully overthrown was a matter for the jury, and not for the
court, to determine, being a question of contested fact."

But in this case, as we have endeavored to show, there were,
besides the presumption mentioned, facts and circumstances
tending to show that defendant did not enter, or, after entry,
hold possession, in subordination to plaintiff's title, or acquiesce
in plaintiff's claim for rent; and if such was their tendency,
they tended also to establish every fact stated in the instruction
under consideration.

Judgment reversed, and cause remanded.