## LYNCH v. THE METROPOLITAN STREET RAILWAY COMPANY, *Appellant.*

### Division Two, November 29, 1892.

1. **Negligence:** INFANT: STREET RAILWAY: ABSENCE OF BELLS. In an action for the death of plaintiff's son, a boy ten years of age, the evidence tended to show that while on the street unattended he was run over and killed by defendant's street cars drawn by mules. It was daylight, and the deceased knew the street well; the mules were going in a walk, and he could have seen the car if he had looked. *Held*, that it was error to charge the jury that the deceased had a right to presume that the company had complied with the law requiring bells on the mules, in the absence of knowledge to the contrary, as it was a question for the jury whether, if he had exercised due care, deceased would not have observed the lack of bells.

2. ——: ——: ——: ——. The obligation to exercise due care was mutual and correlative, and the jury should have been instructed that the deceased, if himself in the exercise of ordinary care or prudence, had the right to assume that the company would obey the law, and to act on that belief.

3. ——: CARE REQUIRED OF INFANT: INSTRUCTION. An instruction that the deceased was required to exercise only such care as might be expected of a boy of his age and capacity, and that the same degree of care in avoiding danger is not required from a person of tender years and imperfect discretion as from a person of maturer years and greater discretion, under similar circumstances, was erroneous in assuming that the deceased was a person of imperfect discretion, instead of leaving that question to the determination of the jury; and also in failing to direct the jury that before plaintiff could recover it must appear that the deceased was using, at the time of the injury, the care and caution of one of his age and capacity.

4. ——: ——: CONTRIBUTORY NEGLIGENCE. Where, in such case, there was evidence that deceased had been taken by the plaintiff (his mother) from school because of defect in his speech, it was a question for the jury whether the negligence of the mother in permitting him to go unattended contributed to the injury.

5. **Negligence:** STREET RAILWAY: DEATH FROM ABSENCE OF BELLS: DAMAGES. Where one is killed by a street-car company by reason of the company's failure to comply with a city ordinance requiring bells on the animals drawing the car, the sum of $5,000 is recoverable under Revised Statutes, 1889, section 4425.

6. ————: QUESTION FOR JURY. Where the facts relating to the question of negligence are such that reasonable men might come to different conclusions thereon, the issue is one for the jury.

*Appeal from Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

REVERSED AND REMANDED.

*Pratt, Ferry & Hagerman* for appellant.

(1) The court below erred in giving plaintiff's instruction 4 and other conflicting instructions, and in refusing defendant's instruction 7. *Thomas v. Babb,* 45 Mo. 384; *Goetz v. Railroad,* 50 Mo. 472; *Henschen v. O'Bannon,* 56 Mo. 289; *Simmons v. Carrier,* 60 Mo. 581; *State v. Simms,* 68 Mo. 305; *Frederick v. Allgaier,* 88 Mo. 598; *Spohn v. Railroad,* 101 Mo. 417. (2) The court erred in giving plaintiff's instruction 6, and in refusing defendant's instructions 10 and 14. *State v. Hecox,* 83 Mo. 531; *Barr v. Armstrong,* 56 Mo. 577; *Wilmott v. Corrigan,* 17 S. W. Rep. 490; *Tucker v. Railroad,* 26 N. E. Rep. 916. (3) The court erred in giving plaintiff's instruction 2. This instruction assumed that the deceased actually had in mind the requirements of the ordinance and relied thereon. The presumption referred to (if the instruction properly states the law) was one of fact (*Justice v. Lang,* 52 N. Y. 323), and should not have been mentioned to the jury when the issue as to contributory negligence was submitted. *Moberly v. Railroad,* 98 Mo. 183; *Rapp v. Railroad,* 17 S. W. Rep. (Mo.) 487; *Ham v. Barrett,* 28 Mo. 388, 389; *Chouquette v. Barada,* 28 Mo. 491, 499; *Schulter v. Ins.*

*Co.*, 1 Mo. App. 285, 289; *Railroad v. Stebbing*, 62 Md. 504; *Railroad v. Brazil*, 72 Tex. 233; 2 Thompson on Trials, sec. 2290. The instruction is also vulnerable to the objection that it singles out and improperly comments upon an isolated matter. *Anderson v. Kincheloe*, 30 Mo. 520; *Clark v. Hammerle*, 36 Mo. 620; *Chappell v. Allen*, 38 Mo. 213; *Fine v. Schools*, 39 Mo. 59, 67; *Jones v. Jones*, 57 Mo. 138; *Wilmott v. Railroad*, 106 Mo. 535. The right to presume that a railroad company will comply with the law as to signals only exists where the traveler looks and listens before crossing the track, and then neither knows nor can know to the contrary. Beach on Contributory Negligence, sec. 13; 1 Shearman & Redfield on Negligence [4 Ed.] sec. 92; *Fletcher v. Railroad*, 64 Mo. 484, 489; *Zimmerman v. Railroad*, 71 Mo. 476; *Hanlon v. Railroad*, 104 Mo. 381; *Dlauhi v. Railroad*, 105 Mo. 645. (4) So the court erred in giving plaintiff's instruction 8, and in refusing defendant's instruction 15. The evidence warranted the submission of the contributory negligence of Mrs. Lynch. *Reilly v. Railroad*, 94 Mo. 600; *Lovett v. Railroad*, 6 Allen, 557; *Schierhold v. Railroad*, 40 Cal. 447. (5) The court also erred in giving plaintiff's instructions 9 and 10 requiring the jury to assess the damages at $5,000 absolutely. The want of bells was not negligence whilst running, conducting or managing a locomotive or train of cars. *First.* The legislature never intended that a horse car should be included within the language of Revised Statutes, section 4426. *Railroad v. Railroad*, 2 Duv. (Ky.) 178; *Thomas v. Simon*, 25 Pac. Rep. 147; Sedgwick on Constitutional & Statutory Law, 225. *Second.* Because the negligence aimed at by the first part of section 4425 was such as was in the act of moving the car. *Crumpley v. Railroad*, 98 Mo. 34; *King v. Railroad*, 98 Mo. 235; *Rapp v. Railroad*, 106 Mo. 423. *Third.* The horse car is covered

by the third part of section 4425, referring to the negligence of the driver of a stage-coach or other public conveyance. But the failure of the company to provide bells as required by ordinance was not negligence whilst driving the car. *Crumpley v. Railroad*, 98 Mo. 34; *King v. Railroad*, 98 Mo. 235; *Rapp v. Railroad*, 106 Mo. 423. *Fourth.* A failure of the company to provide bells is the act of negligence charged and proven. To that act plaintiff is confined. *Waldhier v. Railroad*, 71 Mo. 514; *Schlereth v. Railroad*, 96 Mo. 509. A want of bells occasioned by the defendant's failure to furnish same was a defect in the machinery and appliances. *Com. v. Gaslight Co.*, 12 Allen, 75. For such a failure the penalty clause of the statute can only be invoked by passengers. *Higgins v. Railroad*, 36 Mo. 418; *Sawyer v. Railroad*, 37 Mo. 240; *Elliott v. Railroad*, 67 Mo. 272; *Holmes v. Railroad*, 69 Mo. 536; *Flynn v. Railroad*, 78 Mo. 201.

*Beebe & Watson* and *F. W. Randolph* for respondent.

(1) Plaintiff's instructions do not conflict with defendant's. (2) The evidence in this case fully warranted the submission of the driver's negligence in not discovering deceased in the act of returning upon defendant's track in time to have prevented running over and killing him. (3) The court did not err in giving plaintiff's instruction number 6, as it properly declares the law, and did not err in refusing to give defendant's numbers 10 and 14. Plaintiff's instruction has been approved in express terms by this court in *Ostertag v. Railroad*, 64 Mo. 421–424. The distinction between the degree of care required of a boy and an adult was also noticed in defendant's instruction number 11. (4) The court did not err in giving plaintiff's instruction number 2. This instruction asserts a

correct proposition of law. *Wilkins v. Railroad,* 101 Mo. 93; Shearman & Redfield on Negligence [3 Ed.] sec. 31; *Stepp v. Railroad,* 85 Mo. 229; *Petty v. Railroad,* 88 Mo. 320; *O'Connor v. Railroad,* 94 Mo. 157; *Schlereth v. Railroad,* 96 Mo. 290; *Agan v. Shannon,* 103 Mo. 661; *Hart v. Devereux,* 41 Oh. St. 565; *Meeks v. Railroad,* 38 Oh. St. 632; *Baker v. Pendergast,* 32 Oh. St. 494; *Correll v. Railroad,* 38 Iowa, 125; *Newson v. Railroad,* 29 N. Y. 389; *Kellogg v. Railroad,* 26 Wis. 225; *Robinson v. Railroad,* 48 Cal. 421. The instruction is not a comment on any evidence in the case. (5) A child is not required to exercise as high a degree of care as an adult. Shearman & Redfield on Negligence [4 Ed.] sec. 73, p. 105; *Thurber v. Railroad,* 60 N. Y. 326; *Ostertag v. Railroad,* 64 Mo. 421; *Railroad v. Gadman,* 15 Wall. 401; *Railroad v. Stout,* 17 Wall. 657; *Eswin v. Railroad,* 96 Mo. 296. (6) The evidence did not warrant the submission of plaintiff's negligence. Defendant charged in its answer that deceased was guilty of negligence which directly contributed to his injury. And also received instructions based on the assumption that deceased was old enough to be guilty of negligence. If the boy was old enough to be guilty of negligence, then the negligence of the mother did not enter into the case. *Thurber v. Railroad, supra.* (7) The court did not err in giving plaintiff's instruction number 9 as to the measure of damages. The petition charged that defendant negligently and wrongfully failed to provide bells on said team of mules. This charge of negligence against defendant is a charge against each and all of its officers, agents, servants and employes who were in any way connected with the violation of the ordinance. Any violation of the ordinance was negligence within the first clause of section 4425, Revised Statutes. *Kenny v. Railroad,* 105 Mo. 270. Street railways are included in said first clause of

said section. *Liddy v. Railroad*, 40 Mo. 506; *Meyers v. Railroad*, 43 Mo. 523; *O'Flaherty v. Railroad*, 45 Mo. 70; *Werner v. Railroad*, 81 Mo. 368; *Welsh v. Railroad*, 81 Mo. 469; *Farris v. Railroad*, 80 Mo. 325.

GANTT, P. J.—On the fourth day of July, 1888, Richard Lynch, a boy between ten and eleven years of age, residing with his widowed mother in Kansas City, Missouri, within one block of Main street, the principal thoroughfare of that city, was given a nickel with which to buy himself a "milk shake," and was permitted by his mother, the plaintiff in this action, to go unattended to Main street to make his purchase. The defendant was operating a street horse-car railroad on said street at the time, by virtue of a city ordinance. The ordinance required the defendant to have bells on all of its teams hauling its cars along said street, to warn persons on the street of the approach of its cars. About ten o'clock in the forenoon he was seen to pass across said street, a few feet in front of one of defendant's cars drawn by a pair of mules, moving at that time in a walk and up a grade, near the crossing of Fourteenth street. He crossed in safety when, apparently, he discovered he had dropped his money or something on the track, and immediately turned, stepped upon the track just in front of the advancing car, stooped down, and almost instantly was struck by the mules, or one of them.

The mules became frightened by stepping on the boy, and were excited by the firing of crackers in the street, and began at once to jump and plunge, drawing the front wheel of the car against the boy before they could be stopped. The boy was taken from under the car dead. He seems to have been stunned by the blow from the mule's hoof, as he made no outcry.

There was some conflict in the evidence as to the

distance the boy crossed in front of the car, and how far he got before he stepped back in front of the mules. It was shown and admitted there were no bells upon the mules. The petition alleged negligence: *First.* In failing to provide sufficient number of employes to man the car. *Second.* That the team was unsafe. *Third.* That the driver was negligent in failing to discover the boy *approaching* the track in time to prevent the injury. *Fourth.* That the driver was negligent in failing to discover the boy *in the act of crossing* in time to prevent the accident. *Fifth.* That the driver was negligent in not discovering the boy *after he got* on the track, in time to prevent the injury. *Sixth.* The driver failed to stop *after knocking the boy down,* in time to prevent the injury. *Seventh.* That defendant negligently failed to provide bells on the mules to warn persons of the approach of the car.

The court gave following instructions for plaintiff:

"1.   The jury is instructed that contributory negligence is a defense, and must be proved to your satisfaction by a preponderance of all the evidence in the case.

"2.   The court instructs the jury that the deceased, Richard Lynch, when crossing the track, and going back upon the same, had a right to presume that defendant had complied with the law as to providing bells on said mules, in absence of knowledge to the contrary.

"3.   The court instructs the jury that it was the duty of the defendant to have bells attached to the mules drawing said street car, and, if you find and believe from the evidence that at the time of the injury the bells were not attached to said mules, then the court instructs you that defendant's failure to provide said bells was negligence; and if you further find and believe from the evidence that such failure to provide and attach bells to said mules was the direct cause of

deceased being run over and killed without negligence on his part, as explained in these instructions, then your verdict must be for plaintiff.

"4. The jury are further instructed that, if they believe from the evidence that there was a person driving said car before and at the time of said injury, then it was the duty of said person to keep a vigilant watch ahead to avoid injuring persons using said street; and if you believe from the evidence that said person might, by the exercise of reasonable care, have seen the deceased, Richard Lynch, in the act of turning around and attempting to go on the track in time, so that by the exercise of reasonable care said person might have checked said mules, and prevented them from running over deceased and causing his death, then your verdict must be for plaintiff.

"5. Although the jury may believe from the evidence that one M. M. Heery was acting in the capacity of driver of defendant's car and mules thereto attached at the time of the injury complained of, yet, if you find and believe from the evidence that, by the exercise of ordinary care and prudence on said Heery's part, he might have seen deceased, Richard Lynch, in a place of danger in time to have stopped the car and avoided killing him, or if, by the exercise of ordinary care and prudence under the circumstances detailed in evidence, the said Heery, while so driving, might have avoided driving over the said Richard Lynch and killing him, after he discovered, or by reasonable care could have discovered, his danger, then your verdict must be for plaintiff.

"6. In determining whether deceased, Richard Lynch, was guilty of contributory negligence, the jury are instructed that said Richard Lynch, son of plaintiff, was required to exercise only such care and prudence as might reasonably be expected of a boy of his age and

capacity under similar circumstances, and that the same degree of care and prudence in avoiding danger is not required from a person of tender years and imperfect discretion as from a person of mature years and greater discretion under similar circumstances.

"7.   The jury are instructed, though you should believe from the evidence that the deceased, Richard Lynch, was negligent in going back on defendant's track to pick up something, yet that will not prevent a recovery if you further believe and find from the evidence that a person was driving prior to and at the time of the injury, and by the exercise of reasonable care might have discovered the deceased in the act of going back on said track, in time, by the exercise of reasonable care, to have prevented the mules from running over and killing him, then your verdict must be for plaintiff.

"8.   You are instructed that there is no negligence proven against plaintiff, Ella Lynch, in this cause.

"9.   If you find for the plaintiff in this cause, you will assess her damages at the sum of $5,000."

"12.   The jury are instructed that ordinary care as mentioned in these instructions depends on the circumstances and facts of each particular case or situation with reference to which the term is used. It is such care as a person of ordinary caution and prudence would usually exercise in the same situation and circumstances. The jury are further cautioned that all the instructions given to them in this cause are to be considered together and as explanatory of each other, excepting numbers 9 and 10, which are only to be considered in the event the jury decide to return a verdict for plaintiff under the other instructions given."

To the giving of each and every one of which instructions the defendant separately at the time duly excepted.

The court gave the following instructions for defendant:

"2. In this kind of a case the plaintiff is bound to aver in his petition, and prove upon the trial, some negligence on the part of the defendant which was the direct cause of the injury complained of, and only such acts of negligence can be considered as are submitted to your consideration by the court. In this case plaintiff charges as negligence the following acts:

"*First.* That defendant neglected and failed to provide a sufficient number of employes to take charge of the car and the mules thereto attached to render the operation thereof reasonably safe.

"*Second.* That defendant failed to furnish the servant then and there operating the car with a safe and suitable team of mules, but on the contrary furnished the servant with an unsafe and unsuitable team of mules to haul said car, knowing that the same were unsafe and unsuitable or by the exercise of reasonable care might have known.

"*Third.* That the servant in charge of said team and car failed to discover Richard Lynch approaching the track in time to prevent the team of mules and car from running into and injuring him.

"*Fourth.* That the servant in charge of said car failed to discover said Richard Lynch in the act of crossing the track in time, by the exercise of ordinary care, to prevent the injury.

"*Fifth.* That said servant failed to discover the said Richard Lynch after he got on the track, in time to prevent the injury.

"*Sixth.* The servant in charge of said car failed to stop it after knocking said Richard Lynch down, in time to prevent killing him.

"*Seventh.* That the defendant negligently and wrongfully failed to provide bells on said team of

mules, to warn persons passing on said street of the approach of said cars.''

"3. The court instructs the jury that they cannot consider the first act of negligence alleged and mentioned in instruction number 2.

"4. The court instructs the jury that they cannot consider the second act of alleged negligence alleged and mentioned in said instruction number 2.

"5. The court instructs the jury that they cannot consider the third act of negligence alleged and mentioned in instruction number 2.

"6. The court instructs the jury that they cannot consider the fourth act of negligence alleged and mention in instruction number 2.''

"11. If the Lynch boy knew that the car was approaching, or, by the exercise of such reasonable prudence as a boy of his age ought to have exercised, could have known of its approach, then it was negligence upon his part to stoop down in front of the approaching mules (if he did so).

"12. If Richard Lynch was guilty of negligence which contributed directly to his getting injured, even though in a slight degree, and a reasonably prudent person driving the car, as soon as the boy's danger could have been seen, could not with reasonable prudence have avoided the injury, you will return a verdict for the defendant.

"13. If Richard Lynch, when he started to cross in front of the car, knew that it was approaching, then there was no negligence in failing to have bells upon the mules, even though there is an ordinance on that subject. The purpose of such an ordinance would be to give a warning of the approach of the car; and, if the boy knew of its approach, the plaintiff cannot claim that the injury was occasioned by the want of a bell.''

"18.   If there was a person driving the car before and up to the time of the injury, and such person, even though you find it was one Heery, a passenger in the car, exercised such care as a reasonably prudent and regular driver would have exercised in a like situation, you cannot and must not find that there was any negligence in the manner in which the car was driven.

"19.   A person driving a street car is not required to stop his car because he sees a boy crossing the street. It is only when there is an appearance of danger to the boy, which a driver of reasonable prudence ought to see, that there is a duty to stop.   If after the driver saw, or by the exercise of reasonable prudence could have seen, the appearance of danger of a collision, and the person driving (if anyone) does all that a reasonably prudent man could do in the exercise of reasonable prudence to avert injury, and he stops the mules and car as soon as he reasonably can, then he is not negligent because it was not sooner stopped.

"20.   If the direct cause of the Lynch boy being knocked down was that, after crossing the track in safety (if he did so), he suddenly and without warning stooped back immediately in front of the mules (if he did so), then the person driving the car (if anyone), whether it was Planck, or Heery, the passenger, or both, did not have time, acting with reasonable prudence, after the boy started back, to stop the car before one of the mules struck the boy (if it did), and if the mules suddenly became so frightened by reason of the boy being under them as to be temporarily beyond the control of the person or persons attempting to hold them (if anyone), and thereby the death of the boy was caused, your verdict must be for defendant.

"21.   If the jury find that Richard Lynch crossed the track in safety, and after crossing it, suddenly and

without warning, stooped back in the track, before the mules immediately, and there was not time after the boy started back for a person driving (if any), acting with reasonable prudence, to stop the car before the mules struck the boy, and the mules suddenly became frightened thereby, so as to be temporarily beyond the control of the person driving (if anyone), thereby killing the boy, you will find a verdict for the defendant.''

The court refused to take from the jury the fifth, sixth and seventh acts of negligence mentioned in defendant's instruction number 2. The court also refused to submit to the jury the question of plaintiff's own contributory negligence, and also refused the following two instructions:

''10. The court declares to you as a matter of law that Richard Lynch was guilty of negligence on his part if he was old enough to know the danger of getting in front of a moving car and stoop down on the track immediately in front of the mules, without looking to see if the car was approaching.''

''14. If Richard Lynch, when he started to cross in front of the car, in the exercise of such reasonable prudence as a boy of his age ought to have exercised, ought to have known that the car was approaching, then there was no negligence which can be said to concur in causing the injury in failing to have bells upon the mules, although there is an ordinance upon the subject.''

The jury returned a verdict for plaintiff assessing her damages at $5,000. Defendant in due time filed a motion for new trial, and, the court having overruled it, appeals to this court. Exceptions were duly saved.

I. After a most careful consideration we are of the opinion that the second instruction for plaintiff ought not to have been given in this case, notwith-

standing it embodies a correct proposition of law as far as it goes.

That instruction is as follows: "The court instructs the jury that the deceased, Richard Lynch, when crossing the track and going back upon the same, had a right to presume that defendant had complied with the law as to providing bells on said mules, in absence of knowledge to the contrary."

The court in its third instruction for plaintiff fully and specifically charged the jury that the failure to have bells on the mules hauling the car was negligence, and, if the failure to provide the bells was the direct cause of the injury to the boy, they must find for the plaintiff.

One of the vital issues in the case was the contributory negligence of the deceased boy, Richard Lynch. The giving of this instruction in addition to the third on the same subject, without modification, had an effect of giving undue prominence to the fact that there were no bells on the mules, and inferentially said to the jury that the boy might rely upon the presumption that there would be bells on the mules, and, if not, then he was exonerated from exercising that care and caution which might reasonably be expected of one of his age and capacity.

When the facts are known and admitted, or are testified to by the witnesses as in this case, then it is the province of the jury to pass on their legal effect under proper instructions from the court. There is then no occasion for indulging in presumptions. "Presumption is a principle of law, by which, for the furtherance and support of right, facts not established by positive evidence are inferred from circumstances." Mathews' Presumptive Evidence, 1. The presumption invoked in this instruction is of the class denominated

*disputable;* its strength and weight must necessarily be affected by the attendant facts, which will weaken or strengthen it as they accord in each case with the experience of mankind. In the instruction itself, it is conceded the presumption that the defendant would obey the law and attach the bells must cease, if actual knowledge to the contrary is shown. Now it is evident that the opportunities for knowledge in such a case must affect the weight of this presumption.

Here the evidence discloses the accident happened in the light of day; the street was clear of obstructions; the car was moving at a walk in full view of the boy; the boy was shown to have often been on the street, living within one block of it; he crossed the street at most not over fifteen feet in front of the car; he was not deaf; by the exercise of the slightest prudence, he could have seen the car, and known there were no bells on the mules. The presumption, indulged by the instruction, was thus apparently negatived by the evidence of his own senses. *Milburn v. Railroad,* 86 Mo. 104. Now is it not apparent that a charge from the court under such a state of undisputed facts, that he might rely upon a presumption that the company would have bells on the mules, was nothing more nor less than an invitation to the jury to excuse the boy from using his senses and observing what was patent to everyone else on the street?

It was admirably adapted to turning the scale in plaintiff's favor in an evenly balanced case, and gave undue prominence to one fact, to the exclusion of the other, and ought not to have been given. *Baker v. Pendergast,* 32 Ohio St. 494; *Jetter v. Railroad,* 2 Keyes (N. Y.) 154. In *Moberly v. Railroad,* 98 Mo. 183, the presumption was invoked in the trial court, that plaintiff was in the exercise of due care when he was injured, but this court, while recognizing the pre-

sumption as correct in a proper case, held that it was reversible error to give it, where the defense was contributory negligence, and where there was abundant evidence from which plaintiff's negligence might have been found, BARCLAY, J., saying: "The jury should have been left to make such finding as they considered just on that issue, *without casting into the balance such a reference to the presumption obtaining in the absence of the evidence.*" And to the same effect are the decisions of this court in *Rapp v. Railroad,* 106 Mo. 423; *Myers v. Kansas City,* 108 Mo. 480; *Barr v. Kansas City,* 105 Mo. 558; *Railroad v. Stebbing,* 62 Md. 504.

We are cited by respondent to the case of *Correll v. Railroad,* 38 Iowa, 120, in which this instruction was approved. An examination of that case will disclose that it was a case for damages for killing stock on a crossing. The instruction did not consist of the excerpt alone which constitutes the instruction in this case. The instruction was as follows: "6. In determining this question as to whether the plaintiff's brother exercised ordinary care, you will take into account his familiarity with the crossing, his knowledge of the regular time of the arrival of trains at the crossing, the fact as to the manner in which the horses and mules were being taken over the track, the obstructions in the way of a fair observation of an approaching train, and determine therefrom, as well as from all the other surrounding circumstances, whether he was wanting in ordinary care and prudence, as above explained, in permitting the stock to go upon the track when they did. It is not for me to say what act or acts amount to negligence on his part; this is for you to determine from all the evidence. It is proper to observe that if the brother of the plaintiff knew of the regular time of the train, and about that time was approaching the track, a greater amount of care was required than if he was

doing the act at some other time. Another thought in this connection: In determining the question as to the negligence of plaintiff's brother, he had the right in approaching the track to assume that the trains of the plaintiff would not be running at a rate of speed greater than six miles an hour. In other words, all men have a right to expect that others will not violate the law." It will be seen at once that the court imposed on the plaintiff *the exercise of care in crossing the track, the duty of looking for the train, which was not required in this case,* and did not hesitate to sum up the controlling facts. This is understood to be the practice in that state. *State v. Carnahan,* 17 Iowa, 256; *Whitaker v. Parker,* 42 Iowa, 585; *Buford & Co. v. McGetchie,* 60 Iowa, 298. We see nothing in that case to change our view of the impropriety of giving the instruction in this case, under the facts developed.

Nor do we think this instruction was cured by the instructions 11 and 13 given for defendant. While the court in these instructions told the jury that, if the boy knew the car was approaching, or, by the exercise of such reasonable prudence as a boy of his age ought to have exercised, could have known of its approach, then there was no negligence in not having bells, by this instruction they were virtually told that *it was prudent in him to assume that the bells were on the mules,* and thus the jury were relieved of the duty of inquiring whether by looking or listening he could have discovered the want of bells. And this leads us to remark that the instruction ought never to be given in its present shape. The true statement of the rule is to be found in *O'Connor v. Railroad,* 94 Mo. 150, as follows: "The defendant has a right to rely upon the exercise of ordinary prudence on the part of plaintiff, as in this case on the part of deceased; so,

on the other hand, the plaintiff has the right to presume due care on the part of the defendant."

In other words the obligation is mutual and correlative, and it should be stated that a person himself in the exercise of ordinary care or prudence has the right to assume that others will obey the law, and to act on that belief. It cannot mean that a plaintiff may recklessly disregard all the laws of prudence himself, and yet require the defendant to observe caution in protecting him against his own imprudence.

II. This brings us to a consideration of the instructions on the question of the liability of the deceased for contributory negligence.

For the plaintiff the court gave instruction number 6: "That he was required to exercise only such care and prudence as might be expected of a boy of his age and capacity under similar circumstances, and that *the same degree of care and prudence in avoiding danger is not required from a person of tender years and imperfect discretion as from a person of maturer years and greater discretion under similar circumstances;*" and refused instructions 10 and 14 asked by defendant, to the effect that he was guilty of negligence if he was old enough to know the danger of getting in front of a moving car, and stooping down on the track in front of the mules without looking to see if a car was approaching, and if, in the exercise of such prudence as a boy of his age ought to have exercised, he ought to have known the car was coming, then the absence of the bells could not be said to concur in causing his injury.

The defendant insists that in the said instruction, number 6, the trial court assumed that the boy was a person of imperfect discretion, and to do this was error.

We think the criticism is just. While this boy was only required to use the discretion that might reason-

ably have been expected of one of his age and capacity, it was clearly the province of the jury to determine what his age and capacity was, and whether he used that discretion in this case. It was for the jury to determine whether he was of imperfect discretion with respect to the danger from this car. The jury must have understood that the boy, in the opinion of the trial judge, was of *imperfect discretion*, and the whole tenor of the instruction was to excuse his negligence for this reason. This was error. *State v. Hecox*, 83 Mo. 531; *Barr v. Armstrong*, 56 Mo. 577; *Eswin v. Railroad*, 96 Mo. 290; *Railroad v. Becker*, 76 Ill. 25.

This instruction was not a fair presentation of the law for another reason; it stopped short of telling the jury that before the mother could recover it must have appeared that the boy was using the care and caution of one of his age and capacity at the time of the injury. Respondent cites us to the case of *Ostertag v. Railroad*, 64 Mo. 421. This instruction was given in that case for the plaintiff, but was not discussed or approved. In that case the defendant recovered the judgment below. The point relied on for reversal was the giving of the second instruction in the case for defendant, which was as follows: "2. Although the same degree of care is not required on the part of a child as is required of a grown person, yet, if the jury believe that the boy Ostertag either knew or was at an age to know that it was dangerous and unsafe to sit under defendant's cars, he was required to avoid such dangerous and unsafe place, and if he failed to do so he was guilty of negligence." The objection was that the court improperly assumed that it was dangerous for the boy to sit under the cars.

The court held that there were some things that a court may assume as negligence, and said: "No one could doubt it was hazardous to sit under the car."

The defendant did not appeal, and, hence, we find no criticism of the plaintiff's instructions. They are copied, but not discussed. To assume that it is dangerous to sit upon a railroad track under a train of cars is entirely different from assuming that a boy of eleven years old is of imperfect discretion. *Becker v. Railroad,* 76 Ill. 25. No instruction in this case properly required the jury to find that the deceased was using the care and prudence that might be expected of one of his age and capacity when he was killed. Number 11 for defendant came nearer doing this than any other; that, however, simply told the jury it would be negligent in the boy if he saw the car coming to stoop down in front of it. That was only one view of the case, and does not cure the want of a proper instruction for plaintiff. The defendant's refused instruction number 10 has the same vice of the plaintiff's sixth. It assumed the boy stooped down in front of the mules. It should have been left to the jury to say whether he did or not.

III. The court peremptorily instructed the jury that there was no negligence shown on the part of the plaintiff, Mrs. Lynch, and refused number 15, asked by defendant: "If the jury should find that Richard Lynch was too young to be guilty of negligence, then you have a right to consider whether his mother exercised reasonable care in letting him go out upon Main street unattended. And, if she did not exercise reasonable care in so doing, she was guilty of negligence, which, if contributing to the death of the boy, prevents a recovery in this case, unless the defendant, by its agents or servants, could, by the exercise of ordinary care, have discovered him in a place of danger in time, by the exercise of ordinary care, to have avoided the injury." The question is, did the evidence warrant the submission of Mrs. Lynch's contributory negligence

to the jury? not was she guilty of negligence as a matter of law? We do not see the inconsistency in defendant's position that is claimed by the plaintiff. Counsel says the case was tried on the theory that the boy could be guilty of contributory negligence, and, hence, if he was negligent it could not be charged his mother was.

But we have seen that it is a question for the jury to say what his capacity was. If they found he had little capacity, can it be said, as a matter of law, that it might not be negligent for the parent to send or trust such a child alone and unattended upon the principal thoroughfare of a great city, where she knew the cars were running at all times of day, on the national holiday, when crowds usually congregate in great numbers?

There was some evidence that the mother had taken the boy out of school because of a defect in his speech. We think that it was a question for the jury whether her negligence contributed to his injury. The mother was suing in her own right. *Reilly v. Railroad*, 94 Mo. 600; *Lovett v. Railroad*, 9 Allen, 557; *Schierhold v. Railroad*, 40 Cal. 447; *Drew v. Railroad*, 26 N. Y. 49; *Tobin v. Railroad*, 18 S. W. Rep. 996.

IV. As to the measure of damages: Defendant does not question that if the jury found for the plaintiff on either of the two grounds, namely, negligence in the driver in not discovering the boy after he got on the track in time to save him, or failure to stop, after knocking the boy down, in time to save him, the verdict should be for $5,000, but he contends that, if the jury found the failure to provide bells was the cause of the injury, then the case does not fall within the first clause of section 4425.

The argument is made that the want of bells is a defect merely in machinery, and that no one but a

passenger can avail himself of this, and that it was not negligence in the managing, conducting or running its cars. That street railways come within the scope of section 4425, we think is clear. *Liddy v. Railroad*, 40 Mo. 507; *Farris v. Railroad*, 80 Mo. 325; *Welsh v. Railroad*, 81 Mo. 469; *Werner v. Railroad*, 81 Mo. 368. The ordinance of the city required that "bells shall at all times be attached to the animals drawing any street car." This provision stands in immediate juxtaposition with the other regulations for *running* the cars. Section 850 provides how many hours a day the cars shall run, at what intervals, and that, after sunset, no car shall run without signal lights, and then follows the requirement of bells. It is clear these provisions were intended for the accommodation and protection of the traveling public. In permitting these companies to occupy the street with tracks and cars, it was prudent that safeguards should be thrown around them to prevent collisions with other vehicles and pedestrians using the streets.

The purpose of the bells was evidently to give notice of the approach of the car and warn all persons off of the track. To omit the bells was to *run its car in a negligent manner* and in violation of the ordinance. To have the bells attached and jingling, when moving or running, was the purpose of the ordinance. While the argument of the appellant is most ingenious, we think the proper and fair conclusion is, that if the deceased was killed because there were no bells sounding, to warn him of the approach of the car, then his death was caused by the *negligent running of the car*, and if the plaintiff recovers at all she is entitled to $5,000.

V. We are asked simply to reverse this case without remanding it for another trial. We think there was evidence to go to the jury under proper

instructions.    Reasonable men might come to different conclusions as to the care or want of care of the driver under the evidence, and when this is the case it is the province of a jury to determine it after hearing and seeing the witnesses.

The specific objections to testimony can easily be obviated on a new trial.    And we do not think there is any real conflict between plaintiff's fourth and defendant's second instruction.    The seeming conflict can be readily obviated on another trial, so as to remove all doubt.

Judgment reversed and cause remanded.    All of this division concur.